262 S.W.2d 591 (1953)
COSTELLO et al.
v.
CITY OF ST.LOUIS et al.
No. 43489.
Supreme Court of Missouri. Division No. 1.
November 9, 1953.
Motion for Rehearing or to Transfer to Denied December 14, 1953.
*592 Samuel H. Liberman, City Counselor, Charles J. Dolan, Associate City Counselor, Freeman L. Martin, Asst. City Counselor, St. Louis, for appellant.
Arnim C. Beste, St. Louis, for respondents.
Motion for Rehearing or to Transfer to Court en Banc Denied December 14, 1953.
CONKLING, Judge.
The basic question before us is the validity of the 1937 sale under the Jones-Munger Law of the real estate here involved. The trial court found the issues in this action to quiet title in favor of plaintiffs and quieted the title. Thereafter the purchaser at the 1937 tax sale, the defendant City of St. Louis, perfected its appeal to this Court.
Prior to her death on January 17, 1927, Ellen M. McCormack owned in fee simple the following described property: "The east 20 feet of Lot 27 and the west 10 feet of Lot 28 in Graham's Subdivision of the Mullanphy tract, and in Block 2314 of the city of St. Louis, together fronting 30 feet on the south line of Mullanphy Street, by a depth southwardly of 130 feet to an alley, with improvements thereon, known and numbered as 2228-30 Mullanphy Street." The property was improved with a fourfamily flat. When Ellen M. McCormack died, by her will the property above described was devised to her husband, John F. McCormack, and to her only child, a daughter, Mae Costello, share and share alike. Mae Costello became executrix of the estate of Ellen M. McCormack. Mae Costello died intestate on December 9, 1932, leaving Thomas Costello, Sr., as her widower, and as her only descendants and heirs at law the following named plaintiffs, Robert Costello, (born July 31, 1931) Thomas Costello, Jr., (born August 10, 1928) Anna Costello, (now Anna Costello Hurtado) (born July 16, 1926) and John Costello, (born February 19, 1924). Thomas Costello, Jr., was declared of unsound mind on November 1, 1950.
At the time of the death of Mae Costello her children were from one year to eight years of age, and they inherited from her an undivided one-half interest in fee simple in the property. John F. McCormack, (then 71 years of age) the grandfather of the above named children, owned the other undivided half interest, and after his daughter's death McCormack became administrator c. t. a. of estate of Ellen M. McCormack. The estate of Ellen M. Mc-Cormack was closed May 16, 1933. John F. McCormack died August 10, 1943, leaving no widow, no child or adopted child, and no descendants of any deceased child, other than the plaintiffs, Robert Costello, Thomas Costello, Jr., Anna Costello Hurtado and John Costello. After the death of his wife, Mae Costello, her widower Thomas Costello, Sr., at no time claimed any dower, right or interest in the real estate and filed no action under Section 469.470, (statutory *593 references are all to RSMo 1949 and V.A.M.S.) and plaintiff Thomas Costello, Sr., is therefore barred from asserting any right, title or interest therein.
After John F. McCormack was appointed administrator c. t. a. of the estate of Ellen M. McCormack he used his letters of administration to convince Thomas Costello, Sr., the widower of Mae Costello, that he, John F. McCormack, had complete control and entire ownership of the real estate involved, and that neither Thomas Costello, Sr., nor the other plaintiffs herein had any right, title or interest in or to the property involved. In 1934 John F. McCormack suffered a cerebral hemorrhage and paralytic stroke and thereafter remained a helpless invalid suffering from senile dementia until his death on August 10, 1943. He was wholly incapable of handling his affairs.
No taxes were paid on this property for the years 1930, 1931, 1932, 1933, 1934, 1935 and 1936. The taxes were delinquent in the total amount (taxes, interest, penalties, etc.) of $749.52. In 1935 and 1936 the Tax Collector of the City of St. Louis advertised and offered the property for sale for delinquent taxes, but in each of those two years when the property was offered there was no bid, and consequently no sale. The Collector again advertised the property for sale in 1937. When the property was again offered for sale in 1937 the defendant city bid $4.75, and sale was made to the city. There was no offer to redeem. The city was issued Certificate of Purchase No. 1972 dated November 4, 1937, and a tax collector's deed dated August 8, 1941. The deed was recorded September 2, 1941. Thereafter, the city placed the property on the tax exempt list. On September 10, 1941, all taxes levied and assessed upon this property were cancelled. Of the above purchase price, $3.75 was paid upon the costs and $1 was applied pro rata on state, school and city taxes.
These plaintiffs filed this action on June 8, 1951. The petition, among other things, alleged that (1) the city's deed was void, (2) the sale was void because notice thereof was not published as provided by statute, (3) the property had a value of about $3,500 and the purchase price of $4.75 was so grossly inadequate as to be a fraud, (4) the land was inadequately described in the Collector's land delinquent list, and in his notice and publication for sale, and in his certificate of purchase; and the petition asserted other claimed grounds of invalidity. Plaintiffs prayed that the deed and certificate of purchase be cancelled and declared void; that title be quieted in plaintiffs, and that defendant be required to account to plaintiffs for rents and income received.
In its answer the defendant city, after certain factual admissions, and certain denials, pleaded the three-year statute of limitations, Section 140.590, and other matters. Defendant filed also its cross-bill in which it prayed to have the title to the property quieted in the defendant city.
From the evidence the court could have and did find the above set out facts, and also found and decreed that:
(1) the only description of the real estate in question in the Collector's publication of notice of sale for delinquent taxes (when the property was sold) was "City Block 2314; E-27, W-28"; the only description of the property in the Collector's certificate of purchase was, "To Whom AssessedJohn McCormack et al; City Block 2314; Street or Avenue, Mullanphy; Front 30; Deep 130; E-27, W-28"; the only description of the real estate in the Collector's land delinquent list was: "Name of owner or person to whom last assessedJohn Mc-Cormack, et al; City Block, 2314; Street or Avenue, Mullanphy; Front feet 30; Feet Deep, 130, Addition, Graham; Lot, E-27, W-28"; and that such descriptions failed to describe the property with reasonable certainty, and failed to comply with Sections 140.030, 140.170 and 140.530; that no title was conveyed to defendant and the attempted sale was void;
(2) The actual value of the real estate as of November 4, 1937, was $2,900 to $3,000; that it was sold to defendant for 15 5/6 cents per front foot; the consideration of $4.75 was so grossly inadequate as to amount to a fraud upon the plaintiffs and the State; *594 that such inadequacy was shown on the face of the certificate of purchase and upon the deed; that the deed and certificate of purchase were void upon their face and did not set in motion the statute of limitations;
(3) Robert Costello, Thomas Costello, Jr., Anna Costello Hurtado and John Costello, as tenants in common, now own the fee-simple title to the property and defendant city of St. Louis has no right, title or interest therein; and the court's decree also dismissed defendant's cross-bill with prejudice, ordered defendant to make a detailed accounting within 45 days of the rents, incomes, profit and expenses, and reserved jurisdiction.
It is conceded that at the time this action was filed plaintiff Robert Costello was a minor and that plaintiff Thomas Costello, Jr., had been declared to be of unsound mind. At the trial and in its brief defendant conceded that the statute of limitations did not run as to those two last above named plaintiffs. It is not contended in this Court that plaintiff Thomas Costello, Sr., has any right, title or interest in the property. However, the defendant-appellant city does here contend that the Collector's deed was prima facie valid, and that the three-year limitation statute has run against the plaintiffs Anna Costello Hurtado and John Costello.
We first consider defendant's contention that the trial court erred in ruling that the various above descriptions of the property were inadequate and failed to describe the real estate with reasonable certainty and failed to comply with the requirements of Sections 140.030, 140.170 and 140.530.
Section 140.030 requires that the Collector's land delinquent list shall set out "a full description of said land and lots" upon which taxes are delinquent. Section 140.170 provides that the Collector shall cause the publication of the list of delinquent lands and lots, "and the land therein described shall be described in forty acre tracts or other legal subdivision, and the lots shall be described by number, block, addition, etc." Section 140.530 provides that, "No sale or conveyance of land for taxes shall be valid if at the time of being listed * * * the description is so imperfect as to fail to describe the land or lot with reasonable certainty".
Somewhat similar contentions as to descriptions claimed to be inadequate have been before this Court on prior occasions. In Sharp v. Richardson, 353 Mo. 138, 182 S.W.2d 151, loc.cit. 152, the description "14 acres, more or less, in the northwest quarter of the southwest quarter (except certain town lots) in section 25, township 22, range 13. Situated in New Madrid County," was held insufficient under what is now Section 140.530. It was there held that such description failed to describe the land with reasonable certainty, because it could not be ascertained what "certain" lots were meant to be excepted. See also, Elsberry Drainage Dist. v. Seerley, 329 Mo. 1237, 1246, 49 S.W.2d 162; Lowe v. Ekey, 82 Mo. 286; O'Day v. McDaniel, 181 Mo. 529, 80 S.W. 895; Orchard v. Laclede Land & Imp. Co., 269 Mo. 647, 192 S.W. 405; State ex rel. and to use of Martin v. Childress, 345 Mo. 495, 134 S.W.2d 136; Sligo Furnace Co. v. Kieffer, Mo.Sup., 229 S.W. 188, for other instances of descriptions held to be insufficient. It seems clear from some of the above cases that under the law as it existed even prior to the enactment of the Jones-Munger Act, in 1933, that a valid judgment for taxes could not have been rendered where the description of the land was so insufficiently and incorrectly given.
The appellant city relies upon Elsberry Drainage Dist. v. Seerley, supra, and upon Section 140.180. We think the Elsberry Drainage case does not support the city's position that the instant descriptions are sufficient to meet statutory requirements. Section 140.180 authorizes the use of certain abbreviations in land descriptions. We are mindful of the general rule that if the description is sufficiently definite and certain to enable one reasonably skilled in such matters to locate the land that it will be held to be adequate. But that rule is modified by the plain requirements of the above statutes that there be a full description by correct lot number, block and addition, *595 and all with reasonable certainty. The description must be accurate, correct and definite even though abbreviations are authorized.
None of the three above set out descriptions used either in the Delinquent Land List, in the Notice of Sale or in the Certificate of Purchase could be said to be "a full description of said lands and lots". "Full" as used in Section 140.030 quite obviously means complete, entire, without abatement, perfect, but allowing of course for the use of the abbreviations authorized by Section 140.180. "Described by number, block, addition, etc.", as required by Section 140.170, requires that the lots shall be correctly given and referred to by number, block and addition, or subdivision.
It is our conclusion that the property was not described with reasonable certainty, that the full and correct description of the lots was not used and that the lots were not described by number. The notice of sale stated only, "City Block 2314; E-27, W-28." This property was in fact the East 20 feet of Lot 27 and the West 10 feet of Lot 28 in Block 2314 in Graham's Subdivision. In each of the three descriptions used by the Collector in the proceedings preliminary to the deed the lots were described as "E-27, W-28," and in only one of the Collector's descriptions (the delinquent land list) did he use the word "Lot" at all and then only in the singular. This property was a part of two lots. And there was no Lot "E-27". Nor was there a Lot "W-28." And even if it be assumed that the Collector meant Lot 27 and Lot 28, and that the statute permits W to be used for West and E to be used for East, the Collector's descriptions are not reasonably certain. Assuming that, even in the total absence of the use of the word "Lot" or "Lots" in two of the Collector's descriptions, one reasonably skilled in locating land were able to interpret the "27" and "28" used to refer to lots so numbered, and that the lots were 30 feet wide, the only conclusion then fairly inferable would be that the property referred to by the Collector was the east one-half (or east 15 feet) of Lot 27 and the west one-half (or west 15 feet) of Lot 28. But the true description of the property is the East 20 feet of Lot 27 and the West 10 feet of Lot 28 in Block 2314 in Graham's Subdivision.
An even more glaring and fatal instance of misdescription is apparent upon the record before us. The petition alleges the true description of this property to be as above set out in the second paragraph of this opinion, and alleged to be in Graham's Subdivision. The trial court's decree quieted the title to property of the same description, and decreed it to be located in Graham's Subdivision. But the original Collector's deed now before us, having been filed here as defendant's Exhibit D, dated August 8, 1951, certified by the stamp and original signature of the Recorder of Deeds of the City of St. Louis to have been filed for record in his office on September 2, 1941, at 9:05 A.M., purports to convey land in Harney's Subdivision. The description on the face of the original deed of the land purported to be therein conveyed was:
"The Eastern 20 feet of Lot No. 27 and the Western 10 feet of lot No. 28 of Harney's Subdivision and in block No. 2314 of the City of St. Louis, Missouri, fronting 30 feet on the South line of Mullanphy Street, by a depth Southwardly of 130 feet to an alley."
Harney's Subdivision adjoins Graham's Subdivision and under these circumstances it is clear that a deed purporting to convey land in Harney's Subdivision does not comply with the statutes. Section 140.420 makes it the duty of the Collector, under circumstances there stated, to "execute to the purchaser * * * a conveyance of the real estate so sold". This instant deed did not convey "the real estate so sold" on November 4, 1937. Section 140.530 provides that "No * * * conveyance of land for taxes shall be valid * * * if the description is so imperfect as to fail to describe the land or lot with reasonable certainty". The description in the Collector's deed is imperfect and does not describe the property with reasonable certainty. This Collector's deed for reasons above noted is void upon its face.
*596 We next consider the defendant city's contention that the trial court erred in ruling that the purchase price of $4.75 was so grossly inadequate as to render the sale inherently void and to constitute a fraud upon plaintiffs and upon the State, and that the above consideration recited upon the face of the certificate of purchase and the face of the deed are conclusive.
It appears upon the face of the deed that this improved property, 30 feet by 130 feet, which had an average assessment of $2,971 during the delinquent years in question, and which was located on Mullanphy Street in St. Louis, Missouri, was sold by the Collector for delinquent taxes for 15% cents per front foot. In support of its position that the recited purchase price of $4.75 was not inadequate, defendant argues that the city purchased the property at the tax sale in order to protect its lien for taxes in the sum of $474.21, and cites the case of State ex rel. City of St. Louis v. Baumann, 348 Mo. 164, 153 S.W.2d 31. That case merely ruled that where the city in its governmental capacity purchased land under the Jones-Munger Act, the immunity from taxation extended to taxes previously assessed and levied, and that after the expiration of the redemption period the city was vested with an equitable title and had the right to call in the legal title.
The Jones-Munger Act contemplates a sale of the property offered for an amount sufficient to pay the delinquent taxes, interest and charges. Section 140.190; Mahurin v. Tucker, Mo.Sup., 161 S.W.2d 423. But here, where all taxes, interest and charges totalled $749.52, the sale netted only $1 to apply against the total delinquent taxes of $749.52, even if there were some force to the defendant's contention that the city purchased the property to protect its lien for taxes (in the sum only of $360.79 out of a total of taxes, interest and charges due and delinquent of $749.52) it is nonetheless true, under these instant circumstances, that this sale for the unconscionably inadequate sum of $4.75, which sum did not pay any delinquent taxes, interest and charges was a fraud upon the State, as well as upon these then infant plaintiffs.
Bussen Realty Co. v. Benson, 349 Mo. 58, 159 S.W.2d 813; Kennen v. McFarling, 350 Mo. 180, 165 S.W.2d 681; Liese v. Sackbauer, Mo.Sup., 222 S.W.2d 84; Johnson v. McAboy, 350 Mo. 1086, 169 S.W.2d 932; Moore v. Brigman, 355 Mo. 889, 198 S.W.2d 857, and cases there cited. Inasmuch as the deed itself shows upon its face that the Collector sold this improved city property for the unconscionably inadequate price of less than 16 cents per front foot, and inasmuch as such price is sufficient of itself to render the sale inherently void, the Collector's instant deed is void upon its face for this additional reason.
For reasons above appearing, and the instant tax deed of the Collector being void upon its face, the statute of limitations, Section 140.590, never did begin to run and was never set in motion at all as against any of the plaintiffs. Granger v. Barber, 361 Mo. 716, 236 S.W.2d 293; Jamison v. Galloway, Mo.Sup., 254 S.W. 101; Mason v. Crowder, 85 Mo. 526; Pearce v. Tittsworth, 87 Mo. 635; Hopkins v. Scott, 86 Mo. 140, 148. Under the Jones-Munger Act, the proceedings preliminary to and the sale of property by the Collector for delinquent taxes is administrative in character; such preliminary proceedings and sale are non-judicial and ex parte in their nature. No court guides the Collector or his proceedings, and he proceeds upon his own advice. In making his land delinquent list, in his notice and advertisement of sale, in his conduct of the sale, and in his preparation and execution of his certificate of purchase and his deed the Collector must strictly follow and observe the admonition of the statutes in this summary process of taking away from the citizen the title to the latter's land. In this case the Collector did not observe the statutes. And in such cases equity will afford relief. We have consistently declined to give our approval to such a sale for a price, as here, so utterly inadequate as to "shock the moral sense and outrage the conscience."
For the above appearing reasons the trial court did not err in decreeing the purported sale and the deed to be void and in ruling *597 that plaintiffs, Robert Costello, Thomas Costello, Jr., Anna Costello Hurtado and John Costello are now the owners each of an undivided one-fourth interest in the real estate above described.
For the reasons above the decree quieting title in the plaintiffs, Robert Costello, Thomas Costello, Jr., Anna Costello Hurtado and John Costello, is affirmed; and the cause is remanded to the circuit court for such further proceedings, orders and decrees consistent with this opinion as that court may deem proper in any further proceedings which may be had herein.
All concur.